1

2

3

4

5

6

7

8       IN THE UNITED STATES DISTRICT COURT

9       FOR THE EASTERN DISTRICT OF CALIFORNIA

10    HELEN WHELAN,

11              Plaintiff,                              No. CIV S-09-3606 KJM-KJN

12         vs.

13    JOHN E. POTTER, POSTMASTER
       GENERAL, UNITED STATES POSTAL
14    SERVICE,

15              Defendants.                              ORDER

16    _____/

17              This matter is before the court on the motions of defendant ("USPS" or

18    "defendant") for summary judgment and to strike plaintiff's opposition to the motion.  Plaintiff

19    opposes the motions.  The court heard oral argument on Friday, May 18, 2012.  For the reasons

20    set forth below, defendant's motion to strike is granted in part and denied in part, and

21    defendant's motion for summary judgment is granted in part and denied in part.

22    I.      BACKGROUND

23              A.      Procedural History

24              Plaintiff filed her complaint on December 30, 2009, asserting claims for: (1) age

25    discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C.

26    § 621 *et seq*.; (2) disability discrimination for disparate treatment under the Rehabilitation Act of

1

1973, 29 U.S.C. § 706 *et seq.*; (3) disability discrimination for failure to accommodate under the

Rehabilitation Act of 1973, 29 U.S.C. § 706 *et seq.*; (4) "Reprisal for Engaging in Protected

Activity" under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*; (5) gender

discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*; and

(6) pay discrimination under the Equal Pay Act, 29 U.S.C.A. § 206(d)(1). (Pl.'s Compl., ECF

1.) Defendant answered the complaint on March 15, 2010. (Def.'s Answer, ECF 6.)

USPS filed its motion for summary judgment on February 20, 2012. (Def.'s Mot.

for Summary Judgment ["MSJ"], ECF 18.) Plaintiff filed her opposition on March 9, 2012.

(Pl.'s Opp'n to Def.'s MSJ ["Opp'n"], ECF 21.) According to the court's scheduling order,

plaintiff's opposition and documents in support thereof were due by 4:00 p.m., on March 9,

2012. (*See* Status Pretrial Scheduling Order, ECF 8 at 3:16-22.) Plaintiff, however, did not file

her opposition, and various supporting documents, until 10:37 p.m. (*See* Def.'s Mot. to Strike

["MTS"], ECF 72 at 2:20-21.) Plaintiff also filed two declarations and forty-one exhibits in

support of her opposition on March 11, 2012, two days after the court's filing deadline. (*See*

ECF 27-70.) Based on these untimely filings, USPS filed its motion to strike the opposition and

supporting documents on March 16, 2012. (*See* MTS.) Plaintiff filed an opposition to the

motion to strike on March 20, 2012. (Pl.'s Opp'n to Def.'s MTS ["Opp'n to MTS"], ECF 73.)

Plaintiff also filed a number of "amended documents" in support of her opposition to defendant's

motion for summary judgment. (*See* ECF 86-88.)

/////

/////

/////

/////

/////

/////

B.      Factual Background[1]

Plaintiff has been an employee with defendant USPS since 1986.  (UF ¶¶ 1-2.)
This case arises out of plaintiff's allegations that, throughout plaintiff's employment with the
USPS, her employer has continually discriminated against her based on her age, gender and
disability.  Specifically, "[t]his lawsuit is based on two Equal Employment Opportunity claims
filed by Whelan: Claim 4F-956-0170-07 (the '2007 claim') and 4F-956-0080-08 (the '2008
claim')."  (UF ¶ 6.)  Plaintiff filed the former claim on November 14, 2007, and the latter on
April 17, 2008.  (UF ¶¶ 7-8.)  The Equal Employment Opportunity Commission ("EEOC")
issued a decision on September 25, 2009, notifying plaintiff that she had to file suit within ninety
days of receiving the decision.  (UF ¶ 10.)  Defendant states that "[p]laintiff does not know when
she received the final agency decision" (UF ¶ 11); plaintiff, however, submitted a declaration
stating she "received the EEOC Office of Federal Operations decision dated September 25, 2009,
from James Wright, [her] non-attorney representative on October 7, 2009."  (Whelan Decl., ECF
27 at 2:13-15.[2])

In February 2006, USPS hired plaintiff as the "Manager, Customer Service at the
Royal Oaks Post Office in Sacramento, California."  (UF ¶ 15.)  In this position, there was one
tier of supervisors between plaintiff and letter carriers, labeled "Supervisor, Customer Service."

---

[1]  The facts are, for the most part, undisputed.  Where the facts are disputed, the court
recounts plaintiff's version of the facts as it must on a motion for summary judgment.  In
recounting the relevant facts, the court refers to defendant's separate statement of undisputed
facts.  (See Def.'s Separate Stmt. of Undisp. Material Fact ["UF"], ECF 18-2.)  However, where
the facts are disputed, the court refers to plaintiff's response to defendant's statement of
undisputed facts.  (Pl.'s Response to Def.'s Separate Stmt. of Undisp. Facts ["PRUF"], ECF 70.)
Moreover, the court, when necessary, cites directly to plaintiff's deposition testimony, which
defense counsel filed as Exhibit A to the motion for summary judgment.  (See ECF 13-3.)
Plaintiff's deposition testimony is referenced as the "Whelan Depo."

[2]  As set forth below, the court declines to strike plaintiff's declaration as defendant
requests.  The court does not find that the declaration is expressly contradicted by plaintiff's
deposition testimony.  At her deposition, plaintiff stated she did not recall the date on which she
received the EEOC decision.  That plaintiff could not at one point recall the specific date she
received the decision from her non-attorney representative does not prevent her from
subsequently submitting a declaration stating the date on which she received the decision.

3

1  (UF ¶¶ 17-18.)  "In May, 2006, Whelan reported that she had been assaulted by a subordinate

2  employee."  (UF ¶ 19.)  Plaintiff testified that this incident caused her to suffer from post-

3  traumatic stress disorder.  (Whelan Depo. at 48:12-17.)  Because of this condition, plaintiff was

4  "[r]estricted from directly supervising non-supervisory employees."  (Affidavit of Scott

5  Renteria,[3] attached as Exhibit C to MSJ ["ECF 18-4"], ECF 18-4.)

6           Plaintiff was detailed to work at the Perkins branch of the USPS as a manager,

7  customer service, in Sacramento, from May 2007 to August 2007.  (Whelan Depo. at 34:6-22.)

8  Her duties  "at Perkins were essentially the same as at Royal Oaks," only on a "smaller scale."

9  (*Id.*)  Plaintiff testified that in 2007, she was denied a merit pay increase because she was not at

10  work due to medical restrictions, and thus, did not complete her  year-end accomplishments.  (*Id.*

11  at 76:16-19.)  However, according to plaintiff, Amber Angeline, a supervisor, customer service

12  (UF ¶ 60), "under the age of 40 at the time had not been at work for several months" and "did

13  not complete her end-of-year accomplishments,"  but was given a pay raise.  (Whelan Depo. at

14  76:14-25.)  Plaintiff also testified that in 2006, a younger employee, Jeanine Philips, who had a

15  non-work related injury was provided non-supervisory work, whereas USPS refused to provide

16  plaintiff similar work to accommodate her post-traumatic stress disorder.  (*Id.* at 76:16-18:18,

17  82:11-15, 83:1-5.)  Both Amber Angeline and Jeanine Philips were supervisors, customer

18  service.  (UF ¶¶ 60, 65.)  Moreover, "[i]n 2006 and 2007, Sacramento Postmaster Dave Dillmand

19  and Scott Renteria asked [Whelan] when she was able to retire."  (UF ¶ 61.)  According to

20  plaintiff, they asked her this because the union did not like her and wanted her removed from her

21  post.  (Whelan Depo. at 80:4-10.)

22           Scott Renteria, the manager of customer service operations for all post offices

23  located in zip codes beginning 958 (UF ¶ 4), conducted an investigative interview with Whelan

24  as a result of what he believed to be plaintiff's failure to discharge her duties at the Perkins

25  _____

26       [3]  Scott Renteria submitted this affidavit in response to the EEO investigation into
     plaintiff's complaints on January 18, 2008.

1   branch.  (UF ¶ 27; ECF 18-4.)  Plaintiff was then transferred to Fort Sutter, as a supervisor of

2   customer service.  (Whelan Depo. at 34:23-35:5.) According to Scott Renteria, "plaintiff was

3   removed from the Perkins Post Office for failing to perform the duties for which she was hired"

4   and was placed at Fort Sutter "in a developmental assignment." (ECF 18-4.)  Plaintiff held the

5   position at Fort Sutter for "[l]ess than 10 days," when plaintiff  took her sick and annual leave

6   because she had "[a]n interaction with an employee that caused [her] to have a flashback."

7   (Whelan Depo. at 35:10-23.)

8           Plaintiff sought a position supervising non-craft employees; defendant, according

9   to plaintiff, refused to provide such a position.  (*Id.* at 92:20-93:1, 95:13-96:25.)  Renteria,

10  however, maintained there were no positions available to accommodate those restrictions.  (ECF

11  18-4.)  Plaintiff, however, testified that such positions were available, but defendants found

12  various reasons not to place her in those positions.  (Whelan Depo. at 85:4-23.)

13           After returning from leave, plaintiff filled a number of random positions until, in

14  August 2010, plaintiff returned as the manager, customer service at Royal Oaks, the position she

15  holds today.  (Whelan Depo. at 41:13-24.)   During this time, plaintiff continually requested that

16  "the USPS change the designation for Royal Oaks Carrier Unit from a Level 22 to a Level 24,

17  despite being told by her supervisors to stop." (UF ¶ 55.)  Before plaintiff accepted the position

18  at Royal Oaks, plaintiff admits that position was advertised as a level 22.  (Whelan Depo. at

19  100:10-15.)  When Michael Hoffman held the position before plaintiff as the manager of

20  customer service at Royal Oaks, the position was a level 22.  (*Id.* at 109:8-12.)  According to

21  plaintiff's deposition testimony, there was not "any change in the work units between the time

22  that Mike Hoffman left that position and the time [plaintiff] came to it." (*Id.* at 109:13-17.)

23  II.    STANDARD

24        A.    Sanctions

25           District courts have inherent power to manage their dockets. *Atchison, Topeka &*

26  *Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998).   Indeed, "[a]ll federal

1  courts are vested with inherent powers enabling them to manage their cases and courtrooms

2  effectively and to ensure obedience to their orders."   *Aloe Vera of Am., Inc. v. United States*, 376

3  F.3d 960, 964-65 (9th Cir. 2004) (per curiam) (internal quotations omitted) (quoting *F.J.*

4  *Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir.  2001)).

5  Moreover, the local rules provide that "[f]ailure of counsel or of a party to comply with the []

6  Rules or with any order of the Court may be grounds for imposition by the court of any and all

7  sanctions authorized by statute or Rule . . . ."  E.D. Cal. L. R. 110.

8          A court may also impose sanctions where "a party, after being properly served

9  with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its

10  answers, objections, or written response."  Fed. R. Civ. P. 37(d)(1)(A)(ii).[4]  Permissible

11  sanctions include: "(i) directing that the matters embraced in the order or other designated facts

12  be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting

13  the disobedient party from supporting or opposing designated claims or defenses, or from

14  introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv)

15  staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in

16  whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating

17  as contempt of court the failure to obey any order except an order to submit to a physical or

18  mental examination."  Fed. R. Civ. P. 37(d)(3)[5]; Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

19  */////*

20

21     [4]  All further textual reference to "Rule" or "Rules" is to the Federal Rules of Civil

22  Procedure.

23     [5]  Rule 37(d)(3) directs the court to "require the party failing to act, the attorney advising that party failing to act, or both to pay the reasonable expenses, including the attorney's fees

24  caused by the failure."  That is, "unless . . . circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).  The court finds that, since it is imposing the severe sanction of striking

25  plaintiff's exhibits in support of its opposition to defendant's motion for summary judgment, it would be unjust to compound that sanction by imposing fees and costs.  Moreover, defendant, in

26  its motion to strike, neither requested fees and expenses nor calculated the amount of "reasonable expenses . . . caused by the failure."  *Id.*

B.     <u>Summary Judgment</u>

Summary judgment is appropriate when the moving party demonstrates that no genuine issue as to any material fact exists, and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  *Id.* at 324.  Indeed, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Id.* at 322.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  FED. R. CIV. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *id.* at 251-52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 289.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  FED. R. CIV. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

Finally, to demonstrate a genuine issue that necessitates a fact finder, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87.

III.   <u>ANALYSIS</u>

A.   <u>Defendant's Motion to Strike</u>

Defendant moves to strike plaintiff's opposition to defendant's motion for summary judgment, arguing that plaintiff's comprehensive failures to comply with the court's

1  scheduling order, the Local Rules and the Federal Rules of Civil Procedure warrant the severe

2  sanction of striking plaintiff's opposition, and documents in support thereof.  Defendant offers a

3  number of arguments in support of its request for sanctions.

4          First, defendant insists that plaintiff's opposition to the motion for summary

5  judgment should be stricken because, as plaintiff concedes, it was untimely.  Specifically, the

6  opposition brief was filed more than six hours late.  (MTS at 2:20-23.)  Defendant also argues

7  that the declarations and exhibits in support of plaintiff's opposition, all of which were filed even

8  later than plaintiff's untimely opposition brief, should also be stricken.  The untimely filing of

9  these documents, defendant argues, is a clear violation of the court's scheduling order.

10         Defendant also argues the opposition should be stricken because it exceeds the

11 page limit imposed by the court's scheduling order—"[t]he court imposed a twenty-page limit

12 for [p]laintiff's opposition. . . .  Plaintiff's brief is twenty-five pages, exclusive of the appendix."

13 (*Id.* at 3:24-26.)  This clerical error is exacerbated, defendant maintains, by plaintiff's failure to

14 comply with Local Rule 133(k), which requires that "[b]riefs exceeding fifteen (15) pages in

15 length shall be accompanied by an indexed table of contents related to the heading or

16 subheadings and by an indexed table of statutes, rules, ordinances, cases and other authorities

17 cited."  (*Id.* at 3:26-4:3.)

18         Defendant asks the court to strike plaintiff's exhibits because plaintiff failed

19 previously to provide them in response to defendant's interrogatories and requests for production

20 of documents.  Specifically, in August 2011, nearly a year ago, defendant propounded upon

21 plaintiff interrogatories and requests for production in accordance with Rules 33 and 34.  (*Id.* at

22 4:11-12.)  According to defendant, "[n]o response to those discovery requests was ever

23 forthcoming, and no documents were ever produced, despite repeated assurances from

24 [p]laintiff's counsel that responses would be given."  (*Id.* at 4:13-16.)  Defendant argues the

25 exhibits filed in support of plaintiff's opposition should have been produced in response to

26 defendant's discovery requests, and that any reliance on these documents in opposition to

1   defendant's motion for summary judgment would prejudice defendant.  Defendant maintains that

2   sanctions are appropriate under Rule 37.

3          Defendant also seeks to strike the miscellaneous documents plaintiff filed

4   concomitantly with her opposition.  Specifically, defendant argues that James Wright's

5   declaration should not be considered because "it was not made under penalty of perjury."  (*Id.* at

6   5:20-21.)  Defendant seeks to strike plaintiff's "further disputed facts" because plaintiff failed to

7   support them with citations to any material in the record in violation of Rule 56.

8          Plaintiff concedes she did not timely file her opposition.  Plaintiff, however,

9   maintains that defendant's motion should be denied because "plaintiff substantially complied

10  with the scheduling order and this court's local rules and has good cause for the delay . . . ."

11  (Opp'n to MTS at 1:23-25.)  Plaintiff argues that good cause existed for her untimely filing

12  because "[d]efendant's agents required job duties for [p]laintiff to perform . . . that cannot not be

13  done within a normal 8-hour day, 40-hour week, . . ."  (*Id.* at 219-22.)  Plaintiff insists, "[t]he

14  amount of work needed to pour over thousands of documents for an adequate  and timely filing

15  exceeded the given deadline, something [p]laintiff's attorney could not anticipate, and neither

16  did [p]laintiff."  (*Id.* at 2:25-27.)

17         Plaintiff also concedes she did not respond to defendant's request for productions

18  of documents and interrogatories.  Instead, plaintiff argues that the court should entertain her

19  exhibits in resolving the motion for summary judgment because "plaintiff has provided the

20  subject exhibits" and defendant could have also moved to compel "before the end of court

21  ordered discovery."  (*Id.* at 4:5-12.)  Plaintiff also argues that her failure to respond to discovery

22  is immaterial because "[d]efendant's attorney raised the same questions during [plaintiff's]

23  deposition."  (*Id.* at 3:6-8.)  On March 20, 2012, after plaintiff filed her opposition to defendant's

24  motion to strike, and long after the close of discovery in this matter, plaintiff did file a response

25  to defendant's form interrogatories.  (*See* ECF 78.)

26  /////

1          In reply, defendant argues that plaintiff had ample time to submit a proper

2  opposition.  Defendant's original motion was filed on February 1, 2012 with a hearing date of

3  March 23, 2012, leaving plaintiff thirty-eight "days to prepare her response to [d]efendant's

4  summary judgment, rather than the 14 days usually accorded parties under the local rules."

5  (Def.'s Reply to Opp'n to MTS, ECF 90 at 2:19-27.)  Defendant also argues the court should not

6  excuse plaintiff's failure to respond to discovery even if "similar questions were answered

7  during deposition."  (*Id.* at 4:5-14.)  Finally, defendant maintains that, contrary to plaintiff's

8  assertions, "[p]laintiff has not previously provided exhibits, nor has she offered to do so."  (*Id.* at

9  6:3-11.)

10          The court declines to grant defendant's request to impose the severe sanction of

11  striking plaintiff's opposition in its entirety, and the declarations accompanying it.  Such a

12  sanction would be the equivalent of a terminating sanction, which should only be imposed in

13  particularly egregious circumstances so as not to undermine the very strong policy in favor of

14  deciding cases on the merits.  *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir.

15  1985) (where possible, cases should be decided on the merits); *see also Couveau v. American

16  Airlines, Inc.*, 218 F.3d 1078, 1081-82 (9th Cir. 2000) (the Ninth Circuit has "repeatedly held

17  that a motion for summary judgment cannot be granted simply because the non-moving party

18  violated a local rule").  The court's determination in this respect is in line with numerous other

19  district court decisions.[6]  *See, e.g., Hamilton v. Willms*, 2005 WL 3143712, at *7 (E.D. Cal. Nov.

20  22, 2005) (denying motion to strike on basis it was not timely); *Jones v. Tozzi*, 2006 WL 355175,

21

---

22      [6] The court notes the severity of plaintiff's numerous failures to comply with the court's
scheduling order.  Indeed, efforts to efficiently resolve cases "will be successful only if the

23  deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the
deadlines.  Parties must understand that they will pay a price for failure to comply strictly with

24  scheduling and other orders, and that failure to do so may properly support severe sanctions and
exclusions of evidence."  *Wong v. Regents of the University of California*, 410 F.3d 1052, 1061

25  (9th Cir. 2005).  That being said, such clerical violations do not merit the severe terminating
sanction defendant requests in this case.  Future violations of the court's orders and/or the local

26  rules, however, will not be tolerated.

1    at *4 (E.D. Cal. Feb. 15, 2006) (same); *Levya v. Kernan,* 2009 WL 1883770, at *3 (N.D. Cal.

2    June 30, 2009) (same).

3              Plaintiff's complete failures to respond to discovery, conversely, warrant the

4    sanctions defendant requests.  See Fed. R. Civ. P. 37(d)(1)(A)(ii) and Fed. R. Civ. P.

5    37(b)(2)(A)(i)-(vii).  On August 3, 2011, defendant propounded upon plaintiff  Interrogatories

6    and a Request for Production of Documents.  (Decl. of Earlene Gordon, ECF 72-1, Exs B, C.)

7    Plaintiff does not dispute that "[n]o response to those discovery requests was ever forthcoming

8    and no documents were ever produced, despite repeated assurances of plaintiff's counsel that

9    responses would be given."  (*Id.* ¶ 3.)  Plaintiff's argument that defendant needed to have filed a

10   motion to compel to preserve the right to make the current motion is unavailing.  *See*

11   *Professional Seminar Consultants, Inc. v. Sino American Technology*, 727 F.2d 1470, 1474 (9th

12   Cir. 1984) (holding that a motion to compel is not a prerequisite to sanctions under Rule 37).

13   Plaintiff has now filed forty-one documentary exhibits, *see* ECF 29-69, and continued to file

14   amended exhibits after defendant filed its reply.  (*See* ECF 80, 86-88.)  Plaintiff's failure to

15   respond to discovery prejudiced defendant's ability to engage in orderly, informed summary

16   judgment practice.  The court declines to consider the exhibits plaintiff filed in support of her

17   opposition.[7]

18         B.    Motion for Summary Judgment.

19              Defendant argues that plaintiff has failed to exhaust her administrative remedies

20   and, even if she did, she has failed to raise a genuine issue of material fact that defendant

21   discriminated against her in any manner.  Plaintiff argues she did exhaust her administrative

22   remedies, and that there are triable issues of fact precluding summary judgment.

23

24              [7] The court also will not consider plaintiff's "disputed facts" (ECF 26), as they are
     unsupported by any other material in the record. Fed. R. Civ. P. 56(c); E.D. Cal. L.R. 260(b).
25   Nor will the court consider the declaration of James Wright (ECF 24) as it was not signed under
     penalty of perjury.  *See Robinson v. Penner*, 2008 WL 544912, at *1 (E.D. Cal. Feb. 26, 2008)
26   (citing *United States for use and benefit of Austin v. W. Elec. Co.*, 337 F.2d 568, 574-75 (9th Cir.
     1964) and 28 U.S.C. § 1746).

1            1.      Exhaustion of Administrative Remedies

2            Defendant offers two arguments in support of its contention that plaintiff failed to

3    exhaust her administrative remedies.  First, defendant contends that plaintiff was issued her right

4    to sue notice on September 25, 2009.  Under Ninth Circuit precedent, defendant argues, the

5    presumed date of receipt is September 28, 2009.  Defendant maintains that plaintiff's suit, filed

6    December 30, 2009, was filed two days after it should have been in light of the ninety-day limit.

7    Defendant also argues that plaintiff  failed to contact an EEOC counselor within 45 days of filing

8    her complaint as required by regulation.  Thus, defendant asserts, "any alleged adverse actions

9    which occurred prior to June 23, 2007 are time-barred."   (MSJ at 7:16-19.)

10           Plaintiff concedes the notice of right to sue was issued on September 25, 2009.

11   However, plaintiff states in her declaration that the EEOC sent the notice to her non-attorney

12   representative, James Wright, from whom she received the notice on October 7, 2009.  (*See*

13   Decl. of Helen Whelan, ECF 27.)  Plaintiff therefore maintains she filed suit within the 90-day

14   limit.

15            Plaintiff further maintains she consulted with an EEOC "counselor regarding

16   [d]efendant's hostile work environment, harassment and discrimination over a long period of

17   time since the mid-1990s and into the late 2007s. *[sic]*"  (Opp'n at 10:10-12.)  Plaintiff asserts

18   that her "hostile environment claims" constitute a series of acts that were part of the same

19   unlawful practice.  Thus, plaintiff maintains, because at least one act occurred within the

20   limitations period, her hostile environment claims were exhausted within the limitations period

21   under the continuing violations doctrine.  (Opp'n at 10-11 (citing *Nat'l Railroad Passenger Corp.*

22   *v. Morgan*, 536 U.S. 101 (2002)).)

23           A plaintiff filing suit under the ADEA or Title VII must file the complaint within

24   ninety days of receiving a right to sue notice from the EEOC.  29 U.S.C. § 626(2); 42 U.S.C.

25   § 2000e-16(c).  The Code of Federal Regulations requires that "[a]ggrieved persons who believe

26   they have been discriminated against on the basis of race, color, religion, sex, national origin,

1  age, disability, or genetic information must consult a Counselor prior to filing a complaint in

2  order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a).  The regulations further

3  provide that the "aggrieved person must initiate contact with a Counselor within 45 days of the

4  date of the matter alleged to be discriminatory . . ." *Id.* § 1614.105 (a)(1).  "Failure to comply

5  with this regulation is 'fatal to a federal employee's discrimination claim.'" *Cherosky v.*

6  *Henderson*, 330 F.3d 1243, 1245 (9th Cir. 2003) (quoting *Lyons v. England*, 307 F.3d 1092,

7  1105 (9th Cir. 2002)).

8  However, "[t]he continuing violations doctrine creates an equitable exception to a

9  statutory limitation in a [discrimination] action when the unlawful behavior is deemed ongoing."

10  45B Am. Jur. 2d Job Discrimination § 1140 (2012); *Deirmenjian v. Deutsche Bank, A.G.*, 2006

11  WL 4749756 at *40 (C.D. Cal. Sept. 25, 2006).  In 2002, the United States Supreme Court

12  clarified the contours of the doctrine, explaining that "discrete discriminatory acts are not

13  actionable if time barred, even when they are related to acts alleged in timely filed charges."

14  *Morgan*, 536 U.S. at 122.  "[D]iscrete acts that fall within the statutory time period do not make

15  timely acts that fall outside the time period." *Id.* at 112.  As recurring examples of discrete acts,

16  the Court mentions "termination, failure to promote, denial of transfer, or refusal to hire . . . ."

17  *Id.* at 114.  Conversely, the Court describes hostile environment claims as "different in kind from

18  discrete acts" because "[t]heir very nature involves repeated conduct." *Id.* at 115.

19  Plaintiff's declaration is sufficient to establish that plaintiff received  the notice of

20  right to sue on October 7, 2009.  Thus, because plaintiff filed her complaint on December 30,

21  2009, she properly filed suit within the ninety-day limit.

22  However, the court finds unavailing plaintiff's argument that "[p]laintiff's claims

23  of a hostile work environment . . . are not time-barred since the matter involves repeated conduct

24  on the part of [d]efendant . . . and at least one act falls among the above so-listed falls within the

25  time period." (Opp'n at 12:2-6.)  Plaintiff has not asserted a claim for hostile work environment.

26  (*See generally* Pl.'s Compl.)  Plaintiff cannot now attempt to circumvent procedural

14

requirements by conjuring a hostile work environment theory.  *See Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980) ("[S]trict adherence to the procedural requirements specified by the legislature is the best guarantee of even-handed administration of the law.")  Moreover, the acts the Court in *Morgan* described as "discrete," and thus ineligible for  application of the continuing violations doctrine, are exactly the kind of acts that form the bases of plaintiff's claims: transfer, failure to promote and failure to provide pay increases.  *See Morgan,* 536 U.S. at 122 (holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Because each discrete act starts a new clock for filing charges alleging that act, the charge must be filed within" the statutory periods.)

Plaintiff first initiated contact with an EEOC counselor on August 7, 2007; any conduct occurring forty-five days prior to that date, June 23, 2007, therefore cannot form the basis of plaintiff's claims.

### 2.   Age Discrimination

Defendant argues that plaintiff has not met her burden of demonstrating a triable issue of fact as to her claim under the ADEA.  Defendant asserts that the younger employees who plaintiff insists defendant treated favorably were not sufficiently similarly situated to plaintiff "in all material respects" because they were supervisors, customer service, while plaintiff was a manager, customer service.  (Def.'s MSJ. at 10:6-22.)  Defendant maintains that plaintiff cannot establish a prima facie case of age discrimination, which requires that similarly situated persons outside the protected class are given favorable treatment.  Plaintiff argues that "[t]he two younger female employees" who were treated more favorably than she was were sufficiently similarly situated because they had the "same jobs, similar conduct expectations, [were] subject to the same standards and engaged in the same conduct as [p]laintiff."  (Opp'n at 14:20-26.)

Under the ADEA, 29 U.S.C. § 621 *et seq.*, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual

with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  In order to establish a prima facie case of age discrimination, a plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008) (citing *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004)).  At the summary judgment stage, plaintiff's burden of establishing a prima facie case is minimal, not even rising to the level of a preponderance of evidence.  *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1062 (9th Cir. 2002).

Recently, this court has applied the three-part burden shifting test established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) in an ADEA case.  *Garcia v. Amerisource Bergen*, 2011 WL 2038552, at *6 (E.D. Cal. May 23, 2011).  *McDonnell Douglas* provides that the plaintiff "must carry the initial burden of establishing a prima facie case of . . . discrimination"; the burden of production then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its action in order to meet the prima facie case.  *Id*. at 802-04.  The burden then returns to the plaintiff to show that the articulated reason is a pretext "'by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Villiarimo,* 281 F.3d at 1062 (quoting *Chuang v. University of California Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000)).  The presumption of discrimination "drops out of the picture" once the employer meets its burden of production, but "the trier of fact may still consider the evidence establishing plaintiff's prima facie case" in evaluating whether the employer's explanation is pretextual.  *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 143 (2000).

/////

1    In her deposition,[8] plaintiff testified that, sometime in 2007, she was denied a

2  merit increase pay raise because "she was on medical care and did not complete the end-of-year

3  accomplishments." (Whelan Depo. at 76:16-19.)  However, another supervisor, Amber

4  Angeline, who was approximately five years younger than plaintiff, also did not accomplish her

5  end-of-the-year accomplishments, but was given a pay raise.  (*Id.* at 76:19-77:4.)  Plaintiff also

6  testified that defendant accommodated another, younger employee's  medical condition through

7  2009, but refused to accommodate plaintiff's medical condition.  (*Id.* at 76:19-25.)  Similarly,

8  plaintiff testified that both Dave Dillman, Postmaster of Sacramento, and Scott Renteria, a

9  Manager of Customer Service,  asked plaintiff "several times" when she was able to retire."  (*Id.*

10  at 78:9-79:20.)  According to plaintiff, during this conversation, Dillman "told [her] that the

11  union did not want her at Royal Oaks." (*Id.* at 80:6-25.)  Viewing this evidence, cumulatively, in

12  the light most favorable to plaintiff, the court finds plaintiff has met her burden of establishing,

13  at the very least, a genuine issue of material fact that defendant discriminated against plaintiff

14  because of her age.

15    Defendant does not contest that the younger employees were treated differently;

16  instead, defendant attacks one aspect of plaintiff's prima facie case: that the younger employees

17  plaintiff alleges were treated more favorably were not similarly situated to plaintiff.  On the

18  record before the court, the court disagrees.  While recognizing the authority defendant cites,

19  which holds that employees must be similarly situated "in all material respects," (MSJ at 10:9-10

20  [citing *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2003)]), the court notes that "[t]he employees

21  need not be identical," they need only be similar "in all material respects." *Earl v. Nielsen*

22  *Media Research*, 658 F.3d 1108, 1114 (9th Cir. 2011).  The employees need only "have similar

23  jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th

24  Cir. 2003).  Amber Angeline and Jeanine Philips were supervisors, customer service; plaintiff

25

26    [8] The transcripts of plaintiff's entire deposition were filed with defendant's declaration in
support of its motion for summary judgment. (*See* MSJ, Ex. A, ECF 18-3.)

1   was a manager, customer service.  A reasonably jury could conclude that these positions have

2   similar duties, such as overseeing subordinates.  Defendant cannot rely simply on the fact that

3   the employees' titles and tiers were different to prevail on summary judgment.  A triable issue of

4   fact exists as to whether these employees were "similarly situated" for purposes of plaintiff's

5   ADEA claim.

6           Even if defendant has articulated legitimate non-discriminatory reasons for its

7   employment decisions, plaintiff has met her burden of establishing a genuine issue of material

8   fact as to whether those decision were merely a pretext.  Specifically, defendant argues that

9   Renteria had to conduct an investigative interview with plaintiff because of service deficiencies,

10  including failure to meet certain reporting requirements.  (MSJ at 11:25-12:4.)  Defendant also

11  argues that plaintiff did not receive a merit increase because she failed to fill out the essential

12  forms.  (*Id.* at 13:9-11.)  USPS relies on the affidavit of Scott Renteria in support of its

13  arguments, which was provided in response to plaintiff's EEO claim.

14          Plaintiff argues that defendant's stated reasons for conducting the investigative

15  interview were merely a pretext, as defendant has proffered no evidence that plaintiff's

16  performance actually was deficient.  (Opp'n at 9:25-10:3.)  Concurrently with her opposition,

17  plaintiff filed two declarations of employees who worked with plaintiff.  According to the

18  declaration of Scott Crow, an employee at Royal Oaks, plaintiff consistently ensured that all

19  required tasks were completed.  (*See* Decl. of Scott Crow, ECF 22.)  According to Ludwig

20  Grossi, who also worked with plaintiff at Royal Oaks, plaintiff "was by far the most involved

21  manager that [he] worked with."  (Decl. of Ludwig Grossi, ECF 23 at 3:25-26.)

22          These averments by third parties establish a triable issue of fact regarding whether

23  defendant's stated reasons for its employment decisions were pretextual.  Determinations of this

24  nature "present[] difficult problems of proof and turn[] largely on credibility determinations

25  committed to the trier of fact."  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986).

26  /////

1    Defendant's motion for summary judgment as to defendant's providing a legitimate,

2    nondiscriminatory basis for its employment decisions is denied.

3           Defendant's motion for summary judgment on plaintiff's first claim for age

4    discrimination under the ADEA thus is denied in full.

5           3.    Disability Discrimination - Rehabilitation Act

6           Defendant insists plaintiff has failed to establish that she has a disability

7    applicable to the Rehabilitation Act so as to proceed to trial.   Even if plaintiff has produced

8    evidence that she has a qualifying disability, defendant argues she has adduced no evidence that

9    her disability was a factor in any employment decisions.  The crux of defendant's argument is

10   that plaintiff has proffered no evidence, direct or circumstantial, that defendant imposed any

11   adverse employment action upon plaintiff because of her disability.

12          The *McDonnell Douglas* burden shifting approach applies to claims under the

13   Rehabilitation Act.  *McCoy v. Dept. of the Army*, 789 F.Supp.2d 1221, 1228-29 (E.D. Cal. 2011).

14   Under the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, it is unlawful for a federal employer to

15   discriminate against persons with a disability.  The Rehabilitation Act encompasses claims for

16   both disparate treatment of a disabled person and for failure to accommodate a disabled person.

17   *Gaytan v. Solis*, 2012 WL 2367822, at *3 (N.D. Cal. June 21, 2012) (citing *Vinson v. Thomas*,

18   288 F.3d 1145, 1154 (9th Cir. 2011)).  Plaintiff has asserted claims for both.

19          a.    Disparate Treatment

20          In order to establish a prima facie case for disparate treatment under the

21   Rehabilitation Act, "a plaintiff must demonstrate that (1) she is a person with a disability, (2)

22   who is otherwise qualified for employment, and (3) suffered discrimination because of her

23   disability." *Walton v. United States Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007)."  The

24   first prong is satisfied by demonstrating that the "individual (1) has a physical or mental

25   impairment that substantially limits one or more of the individual's major life activities; (2) has a

26   record of such an impairment; or (3) is regarded as having such an impairment." *Coons v.*

1   *Secretary of U.S. Dept. Of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004).  "The term 'qualified

2   individual' means an individual who, with or without reasonable accommodation, can perform

3   the essential functions of the employment position that such individual holds or desires."  42

4   U.S.C. § 12111(8).  "Liability in a disparate treatment case depends on whether the protected

5   trait motivated the employer" to treat disabled employees less favorably than non-disabled

6   employees.  *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003).[9]

7           Defendant's contention that plaintiff does not have a disability recognized by the

8   Rehabilitation Act is unavailing.  Plaintiff stated numerous times during her deposition that an

9   attack from a mail carrier caused her to be diagnosed with post-traumatic stress disorder, which

10  plaintiff claims prevented her from supervising craft employees; plaintiff also testified that she

11  has seen numerous health care professionals for treatment.  (*See generally* Whelan Depo. at

12  42:9-53:10); *cf. Mustafa*, 157 F.3d at 1174 (holding that there was at least a triable issue of fact

13  as to whether the plaintiff's alleged post traumatic stress disorder constituted a disability within

14  the meaning of the rehabilitation act.).)  While an official diagnosis of plaintiff's disorder from a

15  treating physician would be stronger evidence of plaintiff's alleged disorder, on summary

16  judgment, plaintiff's burden of establishing a prima facie case is minimal.  *Villiarimo*, 281 F.3d

17  at 1062.  Defendant effectively concedes that plaintiff is a qualified individual, stating in its

18  motion that plaintiff's "alleged disability, post traumatic stress disorder, was not substantially

19  limiting, and did not interfere with her ability to conduct daily life."  (MSJ at 11:5-7.)  Plaintiff

20  has satisfied her burden of establishing the first two elements of her prima facie case for

21  disparate treatment under the Rehabilitation Act.

22          The question remains, however, whether defendant treated plaintiff differently

23  than other employees without disabilities solely because of her disability.  Here, plaintiff "has

24  ───────────────

25      [9]  The Supreme Court, in *Raytheon*, was construing the Americans with Disabilities Act.
    This distinction, however, is irrelevant as the "Rehabilitation Act borrows its substantive
    standards from the Americans with Disabilities Act."  *Gaytan* , 2012 WL 2367822, at *5 (citing

26  *Lopez v. Johnson*, 333 F.3d 959, 961 (9th Cir. 2003)).

1   failed to proffer evidence that [defendant's alleged adverse employment action, such as

2   designating plaintiff to Fort Sutter,] was due *solely* to the fact that [she] was disabled." *Dilbert*

3   *v. Potter*, 2009 WL 1517734, at *8 (N.D. Cal June 1, 2009) (emphasis in original).  Plaintiff has

4   proffered no evidence that she was treated differently than other employees based on the fact of

5   her disability.

6              Defendant is entitled to summary judgment on this claim.

7                     b.      Failure to Accommodate

8              The pertinent question in analyzing a failure to accommodate claim is whether the

9   requested accommodation is reasonable.  *Mustafa v. Clark Cnty. School Dist.*, 157 F.3d 1169,

10  1176 (9th Cir. 1998) (citing *Buckingham v. United States*, 998 F.2d 735, 742-43 (9th Cir.1993)).

11  Plaintiff must show that "the suggested accommodation would, more probably than not, have

12  resulted in [her] ability to perform the essential functions of [her] job." *Buckingham*, 988 F.2d

13  at 742.  The burden then shifts to defendant to demonstrate that the requested accommodation is

14  unreasonable.  *Mustafa*, 157 F.3d at 1176.  To meet this burden, an employer "may not merely

15  speculate that a suggested accommodation is not feasible; . . ." *Buckingham*, 988 F.2d  at 740.

16             Plaintiff testified, at her deposition, that she requested a position that would allow

17  her to perform data preparation, which would comply with her alleged medical restriction to not

18  supervise craft employees.  (Whelan Depo. at 85:1-5.)  Plaintiff stated that, notwithstanding the

19  request, "the only work that [the] Post Office would look for was supervising employees, . . ."

20  (*Id.* at 85:16-18.)  Plaintiff maintains that, over a seven month period, when she was on leave,

21  defendant failed to provide her work that she was physically able to perform, without the

22  requirement of supervising employees.  (*Id.* at 92:20-25, 96:21-25.)  Plaintiff has met her burden

23  of proffering evidence that the requested accommodation would "have resulted in [her] ability to

24  perform the essential functions of [her] job.  *Mustafa*, 157 F.3d at 1176.

25             Defendant, on the other hand, has not met its burden of demonstrating that the

26  requested accommodation was unreasonable.  Rather, it argues simply that plaintiff's testimony

that defendant "fail[ed] to provide her work within her medical restrictions" is "legally

inadequate speculation, conjecture or innuendo" and that "actual evidence is required to pursue

her claim."[10]  (MSJ at 11:9-15.)  Plaintiff's deposition testimony constitutes  sufficient "actual

evidence" to meet plaintiff's burden on summary judgment.  FED. R. CIV. P. 56(c)(1)(A). Triable

issues of fact exist  as to whether defendant failed to provide reasonable accommodations in

accordance with the Rehabilitation Act.[11]

Defendant's motion for summary judgment on plaintiff's claim for failure to

accommodate under the Rehabilitation Act is denied.

### 4   Reprisal for Engaging in Protected Activity

Defendant moves for summary judgment on plaintiff's fifth claim for retaliation,

arguing that plaintiff has failed to satisfy her prima facie burden under Title VII of the Civil

Rights Act of 1964.  Defendant concedes that plaintiff, at one point, engaged in a statutorily

protected activity—"EEO[c] activity during the 1990s"; however, defendant points out that the

alleged retaliation did not occur until the late 2000s, and thus, did not "follow [] on the heels of

[the] protected activity." (*Id.* at 14:9-10.)  Defendant maintains that plaintiff has no claim for

retaliation because of a lack of causation.  (*Id.* at 14:4-18.)

Plaintiff alleges that not only was she retaliated against because of her EEOC

conduct in the 1990s, but also because she "took her job seriously and acted professionally

including monitoring of employees['] conduct."  (Opp'n at 23:7-24.)  At hearing,  in response to

/////

---

[10]  Defendant also submitted Scott Renteria's affidavit, in which he stated, in conclusory
fashion, there were no positions available to accommodate plaintiff's disability.  (ECF 18-4.)  An
employer cannot merely speculate that there were no accommodating positions available.
Whelan testified at her deposition that there were accommodating  positions available. (Whelan
Depo. at 85:1-20.)  There is a triable issue of fact as to whether there were positions available
that would accommodate any disability.

[11]  As set forth in Section B2 above, there are triable issues of fact as to whether
defendant's stated reasons for its various employment decisions were merely a pretext.

1  the court's asking what protected activity plaintiff engaged in, plaintiff's counsel pointed to her

2  2007 and 2008 EEOC complaints.

3          The burden-shifting structure of *McDonnell Douglas* also applies to retaliation

4  claims under Title VII. To state a prima facie retaliation claim under Title VII, a plaintiff must

5  demonstrate "that (1) she engaged in a protected activity, (2) she suffered an adverse

6  employment action, and (3) there was a causal link between her activity and the employment

7  decision.*" Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1197 (9th Cir.

8  2003).  Conduct constituting a "protected activity" includes filing a charge or complaint,

9  testifying about an employer's alleged unlawful practices, and "engaging in other activity

10  intended to oppose an employer's discriminatory practices."  *Id.* (citing 42 U.S.C. § 2000e-3(a))

11  (internal quotations omitted).  To establish the requisite causal link, plaintiff must present

12  evidence that engaging in the protected activity was a "but for" cause of the adverse action. *Id.*

13  In other words, plaintiff must "demonstrate by a preponderance of the evidence that engaging in

14  the protected activity was one of the reasons for [the adverse employment action] and that but for

15  such activity [the adverse employment action would not have occurred]." *Id.*  The Ninth Circuit

16  has stated that "adverse employment action [must] follow [] on the heels of protected activity."

17  *Villiarimo*, 281 F.3d at 1065.

18          None of plaintiff's arguments is sufficient to meet her prima facie burden of

19  demonstrating that defendant retaliated against her.  First, there is no causal nexus between her

20  engagement in protected EEOC activity in the 1990s, and the alleged adverse employment action

21  in 2007 that forms the basis of plaintiff's claims.  Second, there is no legal authority for the

22  proposition that taking one's job seriously or acting professionally is a protected activity for

23  retaliation purposes.  Finally, the 2007 and 2008 complaints cannot constitute the protected

24  activity supporting plaintiff's claim for retaliation because those complaints provide the basis of

25  plaintiff's claims here.

26  /////

1          5.     Gender Discrimination - Equal Pay Act[12]

2          Defendant argues plaintiff cannot meet her prima facie burden under the Equal

3 Pay Act for two reasons: (1) the USPS pay for performance program is a merit based system; and

4 (2) the position plaintiff held at Royal Oaks was advertised as a level 22 position and a male

5 employee, Mike Hoffman, previously held that position as a level 22 employee.  (MSJ  at

6 14:1-12.)  Plaintiff counters that she was discriminated against on the basis of her gender

7 because

8 her position at Royal Oaks was a level 22, but if she were male it would have been a 24.  (Opp'n

9 at 24:5-9.)

10          The Equal Pay Act provides that employers may not discriminate "between

11 employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at

12 which  [the employer] pays wages to employees of the opposite sex . . . for equal work . . . ."  29

13 U.S.C. § 206(d)(1).  Plaintiff's claim here fails because she has not met her burden of

14 establishing a triable issue of fact, that similarly situated male employees were paid higher

15 wages than she was.

16          Plaintiff's only argument in support of her claim under the Equal Pay Act is that

17 the Royal Oaks office would have been designated a level 24 if she were a male. (*See* Whelan

18 Depo. at 99:6-15.)  Her contention, however, is expressly belied by her own deposition

19 testimony: First, when plaintiff first applied for the position, it was already advertised as a level

20

21          [12]  Defendant's memorandum of point and authorities in support of the motion for
22 summary judgment does not address plaintiff's fifth claim for gender discrimination under Title
   VII of the Civil Rights Act of 1964.  At the hearing on the motion, the court asked defense
23 counsel whether defendant was moving for summary judgment on that claim.  Defense counsel
   responded that defendant was moving on plaintiff's claim under the equal pay act, but did not
24 state that defendant was moving on plaintiff's fifth claim for gender discrimination under Title
   VII.  That claim therefore survives.  *See Celotex*, 477 U.S. at 323 (holding that the moving party
25 always bears the initial responsibility of informing the district court of the basis of its motion,
   and identifying those portions of "the pleadings, depositions, answers to interrogatories, and
26 admissions on file together with the affidavits, if any," which it believes demonstrate the absence
   of a genuine issue of material fact).

22 - the level was irrelevant to her gender.  (*Id.* at 100:10-12).  Second, plaintiff admitted that when Mike Hoffman, a male employee, held the same position he held it at a level 22.  (*Id.* at 109:10-12.)  Plaintiff has not met her burden of proffering evidence that defendant discriminated against her by paying her lower wages than her male counterparts for equal work.  As such, defendant's motion for summary judgment on plaintiff's sixth claim for violation of the Equal Pay Act is granted.

IV.   <u>CONCLUSION</u>

Based on the foregoing, the court orders as follows:

1.   Defendant's motion to strike is granted in part and denied in part. Specifically, defendant's motion to strike plaintiff's opposition and declarations in support thereof is DENIED; defendant's motion to strike plaintiff's exhibits in support of her opposition is GRANTED.

2.   Defendant's motion for summary judgment on plaintiff's first claim for age discrimination under the ADEA is DENIED.

3   Defendant's motion for summary judgment on plaintiff's second claim for disability discrimination, disparate treatment, under the Rehabilitation Act is GRANTED.

4.   Defendant's motion for summary judgment on plaintiff's third claim for disability discrimination, failure to accommodate, under the Rehabilitation Act, is DENIED.

5.   Defendant's motion for summary judgment on plaintiff's fourth claim for retaliation under Title VII of the Civil Rights Act is GRANTED.

6.   Defendant's motion for summary judgment on plaintiff's fifth claim for gender discrimination under Title VII of the Civil Rights Act is DENIED.

7.   Defendant's motion for summary judgment on plaintiff's sixth claim for gender pay discrimination under the Equal Pay Act is GRANTED.

1    The final pretrial conference is set for November 1, 2012 at 3:30 p.m.  The jury

2    trial is set for December 10, 2012 at 9:00 a.m.  The parties shall file a joint pretrial statement no

3    later than October 25, 2012.

4         IT IS SO ORDERED.

5    DATED:  August 14, 2012.

7    _____
     UNITED STATES DISTRICT JUDGE